STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss                                          CIVIL ACTION
                                                        DOCKET NO. CV-09-401

PORTLAND PROFESSIONAL FIRE
FIGHTERS ASSOCIATION, LOCAL 740, et al.;
                Petitioner                              ORDER ON MOTION
                                                        FOR TEMPORARY
v.                                                      RESTRAINING ORDER

CITY OF PORTLAND,
                Respondent

Before the Court is Petitioner's motion for a temporary restraining order

pursuant to M.R. Civ. P. 65(a).

## BACKGROUND

Employment relations between the City of Portland ("Respondent" or "City")

and the Portland Professional Fire Fighters Association, Local 740, International

Association of Fire Fighters, AFL-CIO, CLC ("Petitioner" or "Local 740") are governed

by a Collective Bargaining Agreement ("CBA").[1] Article 12 of the CBA contains

provisions and procedure governing personnel reductions. The relevant provision

states:

> Reductions in work force shall be made on the basis of seniority, unless
> the layoff of a specially trained junior member of the Department would
> result in a reduction of the level of services provided by the Fireboat, Air
> Rescue, or Emergency Medical Services (defined herein as employees
> holding an intermediate or higher Maine ALS license). . . .

Ex. A, Art. 12.1. The CBA also contains a grievance procedure that governs "the

interpretation of application by the City of any provision of this Agreement. . . ,"

including the arbitration of unresolved disputes. *Id.* Art. 19.1.

---

[1] The parties submitted a stipulation regarding the authenticity of the Collective Bargaining Agreement and the Seniority list and emergency medical certification list. Exs. A & B.

By letter dated May 29, 2009, the City of Portland Fire Department informed nine (9) senior fire fighters[2] who did not have Fireboat or Air Rescue certifications, or Emergency Medical Services ("EMS") intermediate or higher licensure, that they were subject to layoff pursuant to Article 12 of the parties' C BA. The letters state that these individuals would be laid off as of June 30, 2009.[3] On July 3, 2009, Local 740 filed a grievance on behalf of the nine individuals affected by this layoff. On July 6, 2009, Local 740 filed a verified petition seeking a temporary restraining order, appeal, preliminary restraining order, and other relief.[4] On July 7, 2009, the City filed an opposition to the verified petition. On July 9, 2009, the Court held oral argument on the motion for a temporary restraining order ("TRO"). The TRO would require the City to recall the nine (9) fire fighters pending resolution of the matter at arbitration.

## DISCUSSION

### I.     Jurisdiction

The City argues that the grievance procedure, which includes arbitration provides the exclusive forum for the Petitioners to seek relief. In other words, since the parties agreed to submit any disputes regarding the interpretation of the CBA to arbitration, this Court is without authority to grant, or even consider a TRO petition. To hold otherwise, argues the City, would allow parties to circumvent their contractual obligations to arbitrate employment disputes. Although the Law Court has not addressed this specific issue, the issue has been addressed frequently and nearly by

---

[2] The individual fire fighters are: Travis Gibson, Adam Royer, Adam Bean, Dale Dyer, Elizabeth Morrisey, Leonard Tracy III, Peter Morrison, Ralph Munroe, and Daniel Hassler.

[3] At oral argument, held on July 9, 2009, counsel disagreed as to the exact date of layoff. Counsel for the City submitted that the fire fighters were officially laid off as of July 4, 2009. Counsel for the Petitioner submitted that the nine (9) individuals were permitted to complete their shifts during the first week of July. Thus, the individuals did not experience layoff until after the completion of their shifts between July 6, 2009 and July 9, 2009.

[4] At a scheduling conference held on July 7, 2009, the Court afforded the Petitioner the opportunity to re-file the verified complaint to correct deficiencies regarding the verification. See M.R. Civ. P. 65(a). Petitioner did so on July 9, 2009.

consensus by the federal courts.[5] As summarized by an authority on issues in employment arbitration:

> Even in a matter that is subject to arbitration, a party to the dispute may obtain temporary injunctive relief (including a temporary restraining order and a preliminary injunction) in court. The party seeking the temporary injunction normally must show that the traditional prerequisites for temporary injunctive relief have been satisfied. The matter then proceeds to arbitration, where the final hearing on any request for permanent injunctive relief and damages is held by the arbitrator or arbitrators appointed pursuant to the arbitration agreement.

1-9 O'Meara, Employment Arbitration § 9.02[1]; *See also id.* § 9.02[2], n. 50 (citing cases).

The Court is persuaded that the Law Court, if faced with this issue, would follow the line of logic developed by the federal courts. *See Saga Communications of New England, Inc. v. Voornas*, 2000 ME 156, ¶ 9, 756 A.2d 954, 958 (discussing other jurisdictions' interpretations of "no waiver" provisions in collective bargaining agreements with respect to "provisional application[s] to the courts in order to preserve the status quo."). Arbitration, even arbitration on an expedited basis, cannot afford the immediate relief that can be granted by a court of general jurisdiction. Such relief may be necessary to maintain the status quo of the parties to ensure that the arbitration procedure is not a "hollow formality." *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1052-54 (4th Cir. 1985). For these reasons, the Court holds that it has jurisdiction to consider Petitioner's motion for a TRO.

---

[5] The parties agree that the arbitration provision in the CBA is enforceable and that an arbitrator must ultimately decide this matter. In fact, the parties agreed to an "expedited" arbitration, whereby the parties waived the various steps in the grievance procedure and will proceed directly to an arbitrator.

3

## II.     Standard of Review

In order to succeed on a motion for a temporary restraining order, the moving party has the burden of demonstrating the following: "(1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility), (4) that the public interest will not be adversely affected by granting the injunction." *Ingraham v. University of Maine, 441 A.2d 691, 693 (Me. 1982); see also Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.,* 2003 ME 140, ¶ 9, 837 A.2d 129,132. These four criteria, however, "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together in determining whether injunctive relief is proper." *Dep't of Envtl. Prot. v. Emerson, 563 A.2d 762, 768 (Me. 1989).* The Court may only grant a TRO if it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant." *Bangor Historic Track,* 2003 ME 140, ¶ 10, 837 A.2d at 133. (citing M.R. Civ. P. 65(a)).

### A.     Irreparable Harm

The Petitioners contend that the irreparable harm in this case flows from deprivations of both procedural and substantive due process rights. Petitioners contend that procedural due process mandates that they receive "notice to be heard and a presentation of evidence against each individual." Pets.' Verified Compl. ¶ 14. Next, Petitioners contend that they have a "constitutionally protected property interest in their employment as they may only be removed from employment for just cause." *Id.* ¶ 15. Finally, Petitioners argue that the

4

"post-deprivation review" through arbitration is "insufficient to allow an individual to vindicate an unconstitutional deprivation." *Id.* ¶ 16. The Petitioners also assert that these property interests cannot be cured "by mere monetary reimbursement." *Id.* ¶ 24.

Petitioners' claims are broad and conclusory and are not supported by specific facts demonstrating the irreparable (i.e. permanent or irreversible) nature of the harm they would suffer as required by the Maine Rules of Civil Procedure. M.R. Civ. P. 65(a). In fact, the argument of counsel suggests that the individuals, if successful at arbitration, will receive back pay, re-instatement, and other compensation that would make the parties whole.[6] Additionally, Petitioners' procedural due process claim is without merit given the hearing and opportunity to be heard before this Court. Therefore, Petitioners have failed to assert in their affidavit specific facts demonstrating irreparable harm absent the issuance of a TRO. Having found that the parties will not suffer irreparable harm, the Court does not consider the remaining elements for the issuance of a TRO.

Given that the parties agree that arbitration is the proper forum for the ultimate decision in this matter, this case is stayed until resolution at arbitration.

Therefore the entry is:

Petitioner Local 740's motion for a temporary restraining order is DENIED.

---

[6] The Court is not oblivious or insensitive to the "real world" disruptions caused to these individuals and their families as a result of these layoffs. Nevertheless, a delay in payment is insufficient grounds for the issuance of a TRO. *See New England Tel. & Tel. Co. v. Public Utilities Com.*, 565 F. Supp. 949, 953 (D. Me. 1983) (holding that "a mere delay (during which interest is earned) in receiving money is not considered irreparable injury") (citing 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948 at 434 (1973)).

5

The case is STAYED pending the outcome of a final decision in arbitration.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).


Dated at Portland, Maine this _9th_ day of ___July___, 2009

Robert E. Crowley
Justice, Superior Court

PORTLAND PROFESSIONAL FIRE FIGHTERS ASSOCIATION LOCAL 740 VS CITY OF PORTLAND
UTN:AOCSsr  -2009-0071788                          CASE #:PORSC-CV-2009-00401
------------------------------------------------------------------------------
SEL VD                               REPRESENTATION TYPE        DATE
01 0000008064 ATTORNEY:TARASEVICH, MATTHEW
ADDR:100 MIDDLE ST PO BOX 9729 PORTLAND ME 04104-5029
    F FOR:CITY OF PORTLAND                        DEF          RTND   07/07/2009


02 0000004225 ATTORNEY:KETCHAM, TODD RICHARD
ADDR:50 MARKET STREET PMB 181 SOUTH PORTLAND ME 04106
    F FOR:PORTLAND PROFESSIONAL FIRE FIGHTERS ASSO PL          RTND   07/06/2009




         Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.